IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


QWEST CORPORATION,

        Plaintiff/Counter-Defendant,

v.                                                                                                               CIV 10-0617 RB/KBM

CITY OF SANTA FE, a New Mexico municipal corporation,

        Defendant/Counter-Plaintiff.


## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the parties' briefs regarding Qwest's response to Interrogatory No. 2-12 *(Docs. 119 & 121)* and Plaintiff's Motion for Extension of Deadline for Final Expert Reports or, in the Alternative, to Strike Defendant's Supplemental Disclosures *(Doc. 155)*. The fact that these issues are appropriately addressed together demonstrates the tortured history of this case throughout the discovery process. I cannot overstate the technical questions raised in this litigation nor the challenges posed by relevant changing technologies.

**I.    Interrogatory No. 2-12**

The City's Interrogatory No. 2-12 requested from Qwest the identification of ***documents*** supporting certain statements made by its expert, Dr. Fitzsimmons, in his ***declaration*** filed in support of Qwest's motion for preliminary injunction. Specifically, the Interrogatory asked

> Concerning QWEST0000001 through QWEST0006500, either identify the responsive documents presently contained therein or provide the responsive documents regarding Dr. Fitzsimmons' Declaration, to the extent they exist, with respect to the following:
>     a. the studies that show the "costs that cities incur" (page 3, lines 9-12);
>     b. the basis for the statement that "It is anticipated that the City will claim the increase is related to compensation for the fair market value . . . "(page 3, lines 17-

    19);
        c. the "two types of costs" (page 9, lines 10-13);
        d. the "experience from other municipalities" (page 10, lines 3-5);
        e. the examination of "this process for a number of municipalities" (page 10, lines 25-26);
        f. the "experience from other jurisdictions" (page 13, lines 2-5);
        g. the basis for the claim regarding "recover these costs through price increases" (page 17, lines 6-8); and,
        h. the basis for the statement about the "mechanism" and "prices of UNEs" (Page 18, lines 23-24).

*See Doc. 119* at 1-2.  In response, Qwest referred the City to nearly 3,000 pages of documents already produced.  *See id.* at 2 ("To the extent that there are documents supporting Mr. Fitzsimmons' statements cited in this interrogatory, those documents were previously produced.  *E.g.,* QWEST0002427-QWEST0005298.").

When the City complained about the lack of specificity in identifying which documents were responsive to those issues, Qwest's counsel represented that "Dr. Fitzsimmons did not actively consult any of these documents in formulating his declaration; he instead relied on his base of knowledge and experience, much of which is reflected in these documents."  *See* Snyder Letter of October 3, 2011 to Ives.  After some back-and-forth communications between the counsel, the City offered to

> forego by either formal motion or additional discovery further pursuit of Dr. Fitzsimmons' "understandings" if: 1) Dr. Fitzsimmons will supplement his ***Initial Report*** stating . . . "he did not actively consult any of [those] documents . . . in formulating his declaration [and ***Initial Report***];" and 2) within the requested ***Initial Report supplement***, Dr. Fitzsimmons will identify the specific sources of the four dollar figures cited on Page 7 (lines 25 and 26) of his ***Initial Report***. . . .

*See* Ives Letter of October 17, 2011 to Snyder (emphasis added); *see also Doc. 119* at 3.  At a discovery conference before the Court on October 25, 2011, Qwest's attorney agreed with the

proposal.[1]

However, Dr. Fitzsimmons balked at the "did not actively consult" language agreed upon by counsel for the parties. *See Doc. 142-23 at 3, ¶ 6.* In his now "Third Supplemental Report" Dr. Fitzsimmons maintains, "I cannot state that I did not actively consult the documents: a correct statement is that, to the extent that I consulted these documents, they were used to refresh my recollection concerning reports and studies that I had previously prepared." *Doc. 142-23 at 3.* Qwest therefore responded more fully to Interrogatory No. 2-12, identifying specific documents that he consulted in reference to each of the subparts of Interrogatory No. 2-12. *See generally Doc. 121-1.* The City insists that Qwest be bound by the agreement of counsel and force Dr. Fitzsimmons to insert the agreed upon language in his supplemental reports *See Doc. 119 at 7.*

The City also finds fault with Qwest's response regarding the four dollar figures included in Dr. Fitzsimmons' Initial Report. In his First Supplemental Report, Dr. Fitzsimmons clarified:

> ...I understand that the City has requested support for the dollar figures contained in the following statement at page 7 of the Initial Report, lines 25-26: "I understand that the new Franchise Fee will be more than a four-fold increase, from $184,000 to approximately $785,000 ($568,400 for retail services and $216,400 for wholesale services)." These numbers were provided to me by Qwest. I understood that the $184,000 reflected Qwest's approximate 2010 payment to the City, which is reflected on QWEST0007108A as $184,048.05. I understood that the $568,400 figure represented Qwest's estimate of a 12 month impact of the new franchise ordinance on Qwest's revenue billed from its CRIS system, which is reflected on QWEST0007111A as $568,416.88. I understood that the $216,400 number represented Qwest's estimate of a 12 month impact of the new franchise ordinance on Qwest's wholesale revenue and other revenue billed from its IABS system, which at the time of my report was still being refined. I understand that Qwest has since

---

[1] The Court agrees with Qwest's statement that during the parties' negotiations, the City "expanded" the reference of Interrogatory No. 2-12 from Dr. Fitzsimmons' declaration in support of injunctive relief to his Initial Report as an expert. *See Doc. 121 at 3; Doc. 119-10.* The Court appreciates Qwest's willingness to meet this the expanded request.

> narrowed that estimate to $179,133.87, which is reflected on QWEST0008538. Finally, the $785,000 total figure was the total of previous retail and wholesale numbers provided to me. Based on Qwest's recalculation of the impact to its IABS services, I understand that Qwest estimates that the total annual franchise impact would be $747,550.

*Doc. 121-1* at 4-5. The City contends that Dr. Fitzsimmons and/or Qwest is obligated to provide the underlying calculations for these figures. *See Doc. 119* at 7.

As an initial matter, I find it frustrating that Qwest's counsel apparently failed to consult Dr. Fitzsimmons before repeatedly misrepresenting his understanding of how the expert relied upon the documents in formulating his opinions. It is the rare case when I fail to enforce agreements reached by counsel in resolving discovery disputes. But clearly, I cannot require Dr. Fitzsimmons to make assertions with which he does not agree.

Dr. Fitzsimmons' more complete response to Interrogatory No. 2-12 goes a substantial distance toward resolving the matter completely. However, given Dr. Fitzsimmons' admitted reliance upon unnamed "subject matter experts at Qwest" and the City's continuing dissatisfaction with Dr. Fitzsimmons' calculation of the franchise fee, I find that the City is entitled to a more complete explanation directly from Dr. Fitzsimmons. I will therefore allow the City to take Dr. Fitzsimmons' deposition. I will also require Qwest to pay all costs and expenses for the City's deposition of Dr. Fitzsimmons as a sanction for the delay in providing the requested information and the exorbitant time and effort required to get to this point.

I am hopeful that Dr. Fitzsimmons will be adequately prepared to address the City's questions completely. The City may file an appropriate motion to depose the as yet unnamed experts at Qwest, if necessary, after the deposition of Dr. Fitzsimmons is complete.

**II. Extension of the Expert Deadline**

Noting that the City has recently named eight new witnesses who are current or former

City of Santa Fe employees, Qwest requests that the Court extend its expert deadline of October 16, 2011. *See generally Doc. 155*. Although the City obtained an extension of its own expert deadlines, the City opposes Qwest's requested extension, arguing that Qwest should not be allowed to rehabilitate its expert, Dr. Fitzsimmons, through supplementation at this late date. *See Doc. 165* at 11-12. The City specifically references Qwest's initially deficient responses to Interrogatory No. 2-12. *See id.* at 9-10. Although it appears that Qwest has not propounded written discovery as to specific opinions held by the City's expert, it notes that the City's discovery responses have been just as vague as Qwest's initial response to Interrogatory No. 2-12. *See Doc. 171* at 3 (referencing a general request for documents reviewed and/or relied upon by the City's experts, and the City's response referring Qwest to "all pleadings and testimony, all exhibits ... ," and all documents provided in discovery).

    I find that extension of Qwest's expert deadline is appropriate under these circumstances, and direct counsel to confer and propose a new set of mutually agreed deadlines to be adopted by the Court, taking into account the September 24, 2012 trial setting ordered by District Judge Robert C. Brack. *See Doc. 75*.

    Wherefore,

    **IT IS HEREBY ORDERED AS FOLLOWS:**

1. With its supplementations of its expert's report, Defendant Qwest has met its obligations to respond fully to the City's Interrogatory No. 2-12;

2. The City will be permitted to depose Qwest's expert, Dr. Fitzsimmons, to clarify his opinions in light of the supplementations and additional information provided, at Qwest's expense;

3. Upon completion of Dr. Fitzsimmons' deposition, and only if necessary, the City

        may file a motion seeking to depose Qwest employees on whom Dr. Fitzsimmons may have relied for information supporting his opinions;

4.     Qwest's Motion for Extension of Deadline for Final Expert Reports is granted; and

5.     Counsel will confer and no later than April 21, 2012, provide the Court with a new set of mutually agreed deadlines to be adopted by the Court, taking into account the September 24, 2012 trial setting ordered by District Judge Robert C. Brack.

**IT IS SO ORDERED.**

*[signature: Karen B Molzen]*

UNITED STATES CHIEF MAGISTRATE JUDGE