IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

QWEST CORPORATION,

    Plaintiff/Counter-Defendant,

v.                                        CIV 10-0617 RB/KBM

CITY OF SANTA FE, a New Mexico
municipal corporation,

    Defendant/Counter-Plaintiff.

## ORDER ON THE CITY'S MOTION TO ENFORCE *(DOC. 236)* THE COURT'S MEMORANDUM OPINION AND ORDER *(DOC. 191)*

THIS MATTER comes before the Court on the City of Santa Fe's Motion to Enforce Memorandum Opinion and Order *(Doc. 236)*, filed July 27, 2012 and fully briefed on August 31, 2012. *See Docs. 236, 243, 252, 253.* Having reviewed the parties' submissions and my prior Memorandum Opinion and Order *(Doc. 191)*, which is the subject of the Motion, I find that the City's Motion should be denied.

The instant litigation concerns the City of Santa Fe's legislative efforts to increase franchise fees and permit costs owed by Qwest. *See generally Doc. 95.* On July 8, 2010, shortly after filing suit against the City, Qwest filed a Motion for Preliminary Injunction *(Doc. 10)*, attaching the Declaration of William Fitzsimmons *(Doc. 10-8)*. Dr. Fitzsimmons represented that "[t]his declaration contains my preliminary expert opinions based on pre-discovery information provided by Qwest." *Doc. 10-8* at ¶ 1. He also made a number of statements relating to his opinion that the City's proposed fees are higher than average costs incurred by other cities. *See generally Doc. 10-8*.

1

The City subsequently propounded discovery seeking documents that supported specific statements found in Dr. Fitzsimmons' declaration. *See Doc. 191* at 1-2 (setting forth the City's Interrogatory No. 2-12). Qwest responded by directing the City to an undifferentiated set of nearly 3,000 documents. *Id.* at 2 (referencing *Doc. 119* at 2). In response to the City's request for a more specific response, Qwest stated, through its attorneys, that "Dr. Fitzsimmons did not actively consult any of these documents in formulating his declaration; he instead relied on his base of knowledge and experience, much of which is reflected in these documents." *Id.* at 2. Negotiations continued, with Qwest ultimately agreeing and representing to the Court that Dr. Fitzsimmons would supplement his Initial Report, stating that he did not actively consult any of the 3,000 pages in formulating his Declaration. *See id.* at 2-3. Dr. Fitzsimmons balked at this language, indicating that to the extent he consulted any of the documents, they were merely used to refresh his recollection regarding reports and studies he had previously prepared. *See id.* at 3. Thereafter, Qwest responded more fully to the City's discovery, identifying specific sets of documents in reference to Dr. Fitzsimmons' specific statements in the Declaration. *See id.*

The City was not completely satisfied with Dr. Fitzsimmons' supplementations. In particular, it noted that Dr. Fitzsimmons relied in part upon unnamed "subject matter experts at Qwest" and that Dr. Fitzsimmons had not fully explained the figures he used to calculate the franchise fee. *See Doc. 191* at 4. As a result, I ordered that the City would be permitted to depose Dr. Fitzsimmons and required "Qwest to pay all costs and expenses for the City's deposition of Dr. Fitzsimmons as a sanction for the delay in providing the requested information and the exorbitant time and effort required to get to this point." *Id.*

In the instant Motion, the City seeks to enforce this Order, claiming that it is entitled to $39,201.96 in addition to the nearly $10,000 in fees and travel expenses for Dr. Fitzsimmons and

the $3,331.62 in court reporting and transcript costs that Qwest already paid. The additional $39,201.96 represents time of two attorneys who prepared for and participated in Dr. Fitzsimmons' deposition; one legal assistant, who assisted in research and preparation of documents and exhibits used during the deposition; and the City's two expert witnesses, who attended both days of Dr. Fitzsimmons' deposition.

I find that the City's request for additional payment is unreasonable. Where I intend to award attorneys' fees, I will generally use the term "fees." In this case, I intended for Qwest to pay the costs and expenses normally associated with a deposition—namely, the travel and preparation time of the expert, and the court reporting and transcript fees, or the expenses that Qwest has already paid. I never contemplated—and honestly, would not have expected—that not one but two of the City's attorneys, let alone both of its experts, would attend the deposition.

**Wherefore,**

**IT IS ORDERED** that the City of Santa Fe's Motion to Enforce Memorandum Opinion and Order *(Doc. 236)* is denied.

**IT IS FURTHER ORDERED** that Qwest Corporation has met its obligations to pay the costs and expenses associated with the City's deposition of Dr. Fitzsimmons, as set forth in my April 13, 2012 Memorandum Opinion and Order *(Doc. 191)*.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE