## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

QWEST CORPORATION,

     Plaintiff/Counter-Defendant,

v.                                          CIV 10-0617 RB/KBM

CITY OF SANTA FE, a New Mexico
municipal corporation,

     Defendant/Counter-Plaintiff.

### ORDER ON THE CITY OF SANTA FE'S MOTION TO COMPEL *(DOC. 242)*

THIS MATTER comes before the Court on the City of Santa Fe's Motion to Compel *(Doc. 242)*, filed August 8, 2012 and fully briefed on September 13, 2012. *See Docs. 242, 249, 262, 263.* Having reviewed the parties' submissions and the relevant law, I find the Motion to Compel *(Doc. 242)* is not well-taken and should be denied.

## I.      BACKGROUND

Qwest brought this lawsuit against the City of Santa Fe on June 28, 2010, alleging that the City's proposed franchise fees and permit costs were either preempted by federal law or in violation of the United States Constitution. *See generally Doc. 95.* On July 8, 2010, Qwest filed a Motion for Preliminary Injunction, including a Declaration by Robert Barton, a Qwest employee from 1969 through 2005, most recently in the position of Manager, State & Local Tax Research. *See Doc. 10-7* at ¶¶ 1-2. As of July 2010, Mr. Barton stated that he was a contractor for Qwest, "providing advice and consulting on state and local tax matters and franchise fee matters for the companies and their affiliates." *Id.* at ¶ 2. Mr. Barton also verified a number of interrogatory responses on behalf of Qwest during this litigation. *See Doc. 242-4.*

1

In addition to his role as a fact witness, however, Mr. Barton has also testified that he performs litigation support. *See Doc. 249* at 6 (quoting from the deposition of Mr. Barton). Specifically, it appears that Mr. Barton is instructed by Qwest's attorney, Mr. Snyder, to gather information responsive to discovery requests received from the City. *See id.* Based upon his supporting role in discovery, Qwest has claimed that certain documents—emails—are subject to protection as attorney work-product because Mr. Barton either initiated them, responded to them, or was copied on them. *See Doc. 242-2* at 3-10. The City disputes the Qwest's charachterization of the documents as attorney work product and seeks production of the Barton documents, numbered 108-142. *See generally Doc. 242*.

## II.    LEGAL STANDARD

"Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). "If it appears that the materials were prepared for mixed purposes, the privilege is available only if 'the primary motivating purpose behind the creation of the [materials was] to assist in pending or impending litigation.'" *McEwen v. Digitran Sys., Inc.*, 155 F.R.D. 678, 682 (D. Utah 1994) (quoting *United States v. Gulf Oil Corp.*, 760 F.2d 292, 296 (Temp. Emer. Ct. App. 1985)).

Non-opinion work product, or work product that involves facts rather than the attorney's mental processes, may be discoverable under certain circumstances. *See In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006); *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*,

136 F.3d 695, 704 (10th Cir. 1998). "Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Pursuant to Rule 26(b)(3), work product may be discoverable upon a party's showing "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(ii).

Documents and analysis prepared by consultants may also be protected by the work-product doctrine. *See, e.g., Nobles*, 422 U.S. at 238-39 (recognizing that since "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial," it is "necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself"). Likewise, documents prepared by agents for the party to the lawsuit are also generally subject to work-product protection. *See, e.g., McEwen*, 155 F.R.D. at 683 (D. Utah 1994) (noting that "materials produced by an accountant in anticipation of litigation under the direction of an attorney have been protected by work product immunity"); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 665 (3rd Cir. 2003) ("Litigation consultants retained to aid in witness preparation may qualify as non-attorneys who are protected by the work product doctrine.").

## III.   ANALYSIS

Where an expert witness also serves as a litigation consultant, federal courts have determined that disclosure of materials considered by the expert is more important than preservation of any potential attorney work product.

> [D]oes a litigant forfeit the privilege that would otherwise attach to a litigation consultant's work when he offers that expert as a testifying witness? Every court to address this "multiple hats" problem has concluded that an expert's proponent still may assert a

> privilege over such materials, but only over those materials
> generated or considered uniquely in the expert's role as consultant.

*Employees Committed for Justic v. Eastman Kodak Co.*, 251 F.R.D. 101, 104 (W.D.N.Y. 2008)

(quoting *S.E.C. v. Reyes*, No. C 06-04435 CRB, 2007 WL 963422, at *1 (N.D. Cal. Mar. 30,

2007)).  The test whether documents are considered by the expert in his role as an expert is

objective and includes "anything received, reviewed, read, or authored by the expert, before or in

connection with the forming of his opinion, if the subject matter relates to the facts or opinions

expressed."  *Id.* at 104 (quoting *Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*, No. 1:05 CV

80, 2007 WL 1560277, at *3-4 (N.D. Ohio May 29, 2007)).  This allows "courts [to] avoid the

problem of having to probe the subjective mental processes of the expert in ascertaining whether

the expert 'considered' a particular document."  *Id.* at 105.  Any ambiguities are to be resolved

in favor of the requesting party, or production.  *See id.* at 104.

In the present case, Mr. Barton is a consultant retained by Qwest, a former employee of

Qwest, and a "fact witness."  *See Doc. 249* at 5.  Because he is not an expert witness, there is no

obligation on the part of Qwest to disclose any documents he may have reviewed or considered

in the formulation of his opinions.  Looking to the substance of Mr. Barton's work on this case,

his testimony appears confined to facts or numbers and calculations rather than conclusions that

might be informed by Mr. Barton's underlying thought processes.

In support of Qwest's 2010 Motion for Preliminary Injunction, Mr. Barton provided

information regarding past franchise fees paid to the City of Santa Fe by Qwest and projected

Qwest's new franchise fee under the City's proposed new ordinance.  *See generally Doc. 10-7*.

In support of his projection, Mr. Barton attached a spreadsheet "explaining how this increase is

calculated relative to Qwest's revenue and that of its affiliates."  *Id.* at 4.  The City has not

identified any problems or information missing from Mr. Barton's calculations.

4

In addition to his calculations of franchise fees, Qwest designated Mr. Barton as its company representative for a Rule 30(b)(6) deposition concerning "Qwest's and CenturyLink's designation of financial records as tax records under the Company's records retention policies, procedures and practices."  *See Docs. 242-8* at 2, 242-9 at 2.  Mr. Barton also worked with Qwest's attorneys to investigate USOCs used for calculating Santa Fe's past franchise fees.  *See Doc. 249-2.*  These tasks, again, reflect a search for facts rather than an expert-like formulation of an opinion.

Qwest has described all of the documents at issue as pertaining to "post-lawsuit discussions concerning Mr. Barton's investigation of former tax tables for purposes of responding to the City's discovery requests."  *See Doc. 242-2* at 3-10.  It appears from the briefing that all of the documents at issue are emails, which were initiated by Mr. Barton in an effort to locate documents responsive to discovery requests and then forwarded to other relevant employees who may or may not have had additional relevant knowledge of tax tables.  *See Doc. 249* at 1.  I find that the requested emails arise from the City's discovery requests, and Mr. Barton was acting as a proxy for Qwest's attorneys in searching out potentially responsive documents.  As such, the emails are protected as attorney work-product, and the City has not demonstrated a substantial need to access them.  Further, because Mr. Barton is not an expert witness, his data collection methods are not relevant or otherwise at issue in this litigation.

**Wherefore,**

**IT IS ORDERED** that the City of Santa Fe's Motion to Compel Disclosure of Documents *(Doc. 242)* is denied.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE