IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

QWEST CORPORATION,

      Plaintiff/Counter-Defendant,

v.                                      CIV 10-0617 RB/KBM

CITY OF SANTA FE, a New Mexico
municipal corporation,

      Defendant/Counter-Plaintiff.


ORDER ON THE CITY OF SANTA FE'S MOTION FOR SANCTIONS REGARDING
CITY-SPECIFIC REVENUE INFORMATION *(DOC. 247)*

      THIS MATTER comes before the Court on Defendant/Counter-Plaintiff City of Santa

Fe's Motion for Sanctions *(Doc. 247)*.  Having reviewed the parties' submissions and the

relevant law, I find the Motion is not well-taken and will therefore deny the Motion.

      The City's Motion highlights its efforts to learn how much revenue Qwest takes in related

to its business in the City of Santa Fe, or "city-specific revenue information."  Specifically, the

City requested documents "related to or pertaining to the amounts and types of revenue received

by Qwest from 1996 to the present for any and all business conducted in the City of Santa Fe."

*See Doc. 161-1* at 19.  Qwest has produced this information from 2002 forward.  It argues that

apart from producing "every document related to Santa Fe with a dollar sign on it," such

information is not available before 2002.  *See Doc. 223* at 12.  As a result, Qwest offered to

provide project backward from the available information.  *See id.*  The City refused this offer,

noting that Qwest has reduced revenue streams reported to the City since 2000 such that

projections from existing data would be inaccurate.  *See id.*

On June 16, 2012, I ordered Qwest to produce city-specific revenue information going back to 1996 by July 9, 2012. *See Doc. 223* at 12. On July 9, 2012, Qwest provided supplemental discovery responses, offering two avenues for recreating the missing 1996-2002 data: (1) a CDW Review or (2) an OSCAR pull. *See Doc. 248-1* at 22. After the parties discussed the matter more fully, the City informed Qwest it would like to proceed with the OSCAR pull on July 30, 2012. *See Doc. 248* at 5. On August 8, 2012, Qwest produced OSCAR information for a limited period of time as a sample. *Id.* at 6. Together with its OSCAR data, Qwest provided a letter stating that it "do[es] not believe that the OSCAR data is usable." *Id.* at 7. Additionally, Qwest indicated it "would need a certification from the City that it will use this data before we produce it." *Id.*

Qwest notes that it has produced significant revenue data, including franchise fee returns going back to 1989, gross receipts tax returns going back to 1993, and a chart that summarizes revenues for each year. *See Doc. 258* at 3. Importantly, Qwest notes that "[t]he only material category of revenue not included in the total gross receipts tax revenue was wholesale revenue," and it states that it has produced additional documents reflecting wholesale revenue going back to 2002. *See id.* Beyond this, Qwest argues that it has produced USOC-level revenue information going back to 2010, which is the first year it maintained such data. *See id.* at 4. Thereafter, the parties negotiated that Qwest would use earlier USOC information and map it to tax categories in an effort to recreate similar data going back before 2010. *See id.* Qwest produced millions of lines of data as part of its effort to retrace data at the USOC level, and it was unaware that the City found all of it "unusable" until the deposition of the City's expert on June 28, 2012. *See id.* at 10. Qwest states that given the volume of data produced, it "expected

the City to use a commercial database program to analyze the data," even re-sorting some of its produced information into smaller files that could be opened in Excel.  *Id.*

In further negotiations with the City and its expert, Garth Ashpaugh, Qwest believes an alternative method of obtaining City-specific revenue data was identified and that the parties agreed to pursue this method.  It argues that Mr. Ashpaugh offered, in his words, "to cut through all this" if Qwest could identify USOCs underlying the Santa Fe franchise base before and after the package tax system enhancements.  *See Doc. 258* at 14-15.  It produced this information within a week of the parties' negotiations.  *See id.* at 16.

In the instant motion, the City acknowledges that requiring Qwest to produce the OSCAR information at this point would effectively reward Qwest by extending this litigation further, causing additional litigation expenses for the City.  *See Doc. 248* at 15.  The City therefore requests the Court to enter an order that (1) precludes Qwest from using City-specific revenue information not previously provided to the City and (2) precludes Qwest from attacking the City's witnesses for not using actual revenue information where none has been produced by Qwest.  *Id.*

Qwest's position throughout this litigation has been consistent.  The Court accepts Qwest at its word that it does not have the type of City-specific information that the City has requested. It follows necessarily from this premise that Qwest will not seek to introduce City-specific revenue information not previously provided to the City at trial.  Accordingly, it is not necessary to enter an order, as it goes without saying that Qwest should be prohibited from introducing any such evidence at trial.  Likewise, Qwest will not be permitted to criticize the City or its experts for failing to use revenue figures that were never provided by Qwest.  In fact, it seems to me the

3

parties should be able to agree upon revenue figures in advance of trial.  To the extent that they are not able to reach such an agreement, I expect that each party will provide the Court with its calculation of the revenue together with a detailed explanation of the relevant factors that go into its calculation as part of its trial brief.

Although I find it troubling that City-specific information does not exist in any kind of a usable format, it appears to me that Qwest has made reasonable efforts to recreate it.  Thus, I cannot find that sanctions are in order.

Wherefore**,**

**IT IS ORDERED** that the City of Santa Fe's Motion for Sanctions *(Doc. 247)* is **denied**.

_____

CHIEF UNITED STATES MAGISTRATE JUDGE