IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

QWEST CORPORATION,

      Plaintiff/Counter-Defendant,

vs.                                                                                                          No. 10-CV-0617 RB/KBM

CITY OF SANTA FE, a New Mexico
Municipal Corporation,

      Defendant/Counter-Plaintiff.

**ORDER DENYING CITY OF SANTA FE'S
MOTION *IN LIMINE* AS TO EVIDENTIARY ISSUES**

This matter is before the Court on the City of Santa Fe's ("City's") Motion *in Limine* as to Evidentiary Issues. (Doc. 321). Five areas of anticipated evidence remain at issue in the instant motion, and the Court will address each in turn. Ultimately, after considering the submissions of counsel and relevant law, the Court **DENIES** the City's motion.

    **I.**    **Evidence Regarding Possible Actions of Other Municipalities**

The City asks the Court to exclude opinion testimony regarding the possibility that other municipalities will adopt franchise agreements based on the 2010 Ordinance, arguing that the possibility is merely speculative and, as such, any testimony to this effect would violate Federal Rule of Evidence 602. (Doc. 321 at 2-4). The City also argues in passing that such evidence is not probative as to Section 253(a) of the Telecommunications Act. (*Id.* at 4). Qwest Corporation ("Qwest") counters that the evidence that other cities may adopt similar ordinances is both relevant and based upon the personal knowledge of its witnesses. (Doc. 334 at 3-5). Qwest points to one case, *Puerto Rico Tel. Co., Inc. v. Municipality of Guayanilla*, 450 F.3d 9 (1st Cir. 2006),

in which the court determined that the financial impact stemming from other municipalities adopting similar franchise fee requirements was relevant in determining whether a franchise fee is effectively prohibitive under Section 253(a). (Doc. 334 at 3). The City attempts to distinguish *Puerto Rico Tel. Co.* from the instant case, pointing out that other municipalities in Puerto Rico had already enacted similar ordinances and that the company had not tracked its revenues and profit by municipality. (Doc. 345 at 2).

As a preliminary matter, the Court notes that this case was scheduled to proceed to trial before a jury when the City filed this motion. However, shortly after the motion was filed, the Court determined that the City is not entitled to a jury trial on Qwest's affirmative claims under the Telecommunications Act and the Dormant Commerce Clause. When a matter is tried to the bench, a party is not prejudiced should the proffered evidence later be deemed irrelevant. *See Coffey v. United States*, No. CIV 08-0588, 2012 WL 1698289, at *1 (D.N.M. May 8, 2012) ("[T]he risk of the evidence causing undue prejudice is reduced given that there will be no jury."); *Evers v. Regents of the Univ. of Colo.*, No. 04-cv-02028-MSK-KLM, 2008 WL 2856449, at *1 (D. Colo. July 23, 2008).

Given the minimized risk of prejudice to the City, the Court denies the request to exclude evidence regarding the actions of other municipalities. Qwest may present testimony and evidence that other municipalities may adopt ordinances similar to the City's 2010 Ordinance, and the City is free to challenge the weight of that testimony. The City may also object should Qwest fail to present sufficient foundation for its witnesses' testimony as to the possible actions of other municipalities.

.

## II. Evidence Regarding the Permit Application Fee in the 2010 Ordinance

Next, the City asserts that evidence concerning the permit application fee under the 2010 Ordinance should be prohibited because the City amended the permit fee provisions of the 2010 Ordinance, thereby resolving Qwest's concerns. (Doc. 321 at 10). Qwest argues that excluding evidence of the permit application fee would require redaction of the 2010 Ordinance and prohibit evidence concerning the original version of the 2010 Ordinance and the preliminary injunction hearing, both of which may become relevant in the course of the trial. (Doc. 334 at 14-15).

The Court will not preemptively exclude all evidence regarding the permit application fee, as both parties agree that the 2010 Ordinance should be admitted in its entirety. (*See* Doc. 345 at 8). However, the City is free to object should the evidence presented by Qwest stray substantially from the issues before the Court.

## III. Evidence Regarding Qwest's Construction and Maintenance Budgets

The City requests that testimony regarding Qwest's construction and maintenance budget for network deployment be precluded as a sanction because Qwest failed to maintain electronic data regarding the budget. (Doc. 321 at 11-13). Additionally, the City contends that this information is no longer relevant because the non-fee provisions of the 2010 Ordinance are no longer at issue. (*Id.*) Qwest asserts that the City's request to exclude evidence of construction and maintenance expenditures as a sanction is untimely. (Doc. 334 at 15 n.3). Additionally, Qwest states that it does not intend to present testimony regarding the budget estimate, which was discussed at the preliminary injunction hearing and lost due to a computer malfunction, but it does intend to present its actual expenditure data, which has been produced to the City. (*Id.* at

3

15-16). According to Qwest, the evidence is relevant to Qwest's expenses and the impact of the new franchise fee. (*Id.* at 16).

All parties agree that the disputed budget evidence will be introduced through Rachel Torrence. Qwest disclosed Ms. Torrence as a witness in the Pretrial Order, and the subject of her testimony was to be "Qwest network in the City; permits pulled and fees charged." (Doc. 301 at 15). Though Qwest did not explain at length the relevance of evidence regarding its construction and maintenance budget, the Court believes that evidence of Qwest's actual expenditures may prove relevant to the prohibitive effect of the franchise fee contained in the 2010 Ordinance. Given that the risk from evidence that may later prove irrelevant is reduced in a bench trial, the Court will not preclude this evidence on the basis of relevance.

As to the City's request to exclude the testimony of Ms. Torrence based on the loss of evidence, the Court finds that the City's request is moot given that Qwest does not plan to present the evidence that was lost. Instead, Qwest proffers that it will introduce evidence of its actual expenditures. Qwest asserted, and the City did not dispute, that the City was provided with the data regarding actual expenditures. The loss of the projected expenditure data has no bearing on the evidence that will be presented at trial, and it is not unfair to the City to allow testimony regarding Qwest's actual expenses.

  **IV.** **Declaration of Michael Horcasitas**

Fourth, the City asks the Court to prohibit Qwest from presenting testimony or evidence referencing the Declaration of Michael Horcasitas as Mr. Horcasitas is not a witness in this matter. (Doc. 321 at 14). Qwest states that it will not submit the declaration as evidence at trial, though it will submit other evidence of competition in the marketplace, of which Robert Brigham and Leo Baca have direct knowledge. (Doc. 334 at 19). Given Qwest's statement, the City

withdrew this portion of its motion. (Doc. 345 at 10). The Court, accordingly, finds the City's request to prohibit testimony regarding Mr. Horcasitas' Declaration moot.

### V.     Evidence Regarding Offset

Finally, the City asks the Court to bar any evidence regarding the alleged gross receipts tax offset because Qwest has not included an offset in its Section 253(a) analysis. (Doc. 321 at 15-16). Qwest admits that it did not include an offset in its payment calculations but states that it was left to the fact-finder to determine the terms of the implied contract. (Doc. 334 at 20-21). Since the City's motion was filed, a jury has determined the meaning of the terms of the franchise contracts between the City and Qwest. The jury concluded that, under the terms of all contracts, the City was entitled to two-percent of Qwest's gross receipts from local exchange services. Consequently, the jury did not reach the offset issue. However, as the jury's conclusion comports with Qwest's interpretation of the implied contract, the Court finds that the City's request to exclude evidence regarding any claimed offset moot. Qwest indicated that it would not present such evidence were the jury to agree with its interpretation of the contract. Because the jury did find in favor of Qwest, the Court finds the City's final request moot.

**THEREFORE,**

**IT IS ORDERED** that the City's Motion *in Limine* as to Evidentiary Issues (Doc. 321) is **DENIED**.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE